Ray E. Gallo (SBN 158903)
rgallo@gallo-law.com
Dominic R. Valerian (SBN 240001)
dvalerian@gallo-law.com
Warren Stramiello (Admitted in NY; *Pro Hac Vice* application to be filed)
wstramiello@gallo-law.com
www.emailprivacylit.com
**GALLO LLP**
1299 Fourth Street, Suite 505
San Rafael, CA 94901
Phone: 415.257.8800

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ryan Corley, William Dormann, Shannon Mehaffey, and Teddey Xiao, individuals,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE, INC.,<br><br>Defendant. | Case No. 5:16-cv-00473<br><br>**COMPLAINT FOR:**<br><br>**1. Violations of the Electronic Communications Privacy Act, 18 U.S.C. §2510 *et seq.***<br><br>**DEMAND FOR JURY TRIAL** |

## 1.    Introduction

1.     Defendant Google, Inc. ("Google") violated the privacy of students, faculty, and staff of U.S. schools, including but not limited to the Plaintiffs in this action, by intercepting and scanning the content of their Google Apps for Education emails, in transit, for Google's own commercial purposes, and without those users' consent. Numerous claims like Plaintiffs' are expected to follow in an amended version of this complaint and/or in related cases.

2.     Google's unauthorized interception of Plaintiffs' email in that manner and for that purpose violated the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 *et seq.* (the "Privacy Act"). Plaintiffs used Google Apps for Education in connection with

their affiliation with their below-identified educational institution(s). They seek, without limitation: (1) injunctive relief in the form of, *inter alia*, an order requiring Google to purge from its records all information gathered from Plaintiffs' messages intercepted in violation of the Privacy Act, including all derivative information; (2) a declaration that Google's conduct violated the Privacy Act; (3) statutory damages under 18 U.S.C §2520 of the greater of $100 a day for each day of violation or $10,000 for each Plaintiff; and (4) attorney's fees and costs of litigation. The allegations herein that relate to Plaintiffs' personal actions are made based on their personal knowledge. The balance are made on information and belief based on the investigation of counsel.

## 2.     The Parties

3.     Plaintiffs are individuals residing in the state of California, are current or former students at the University of California at Berkeley, and are current or former Educational Users whose emails were illegally intercepted by Google.

4.     Defendant Google is a United States corporation headquartered in Mountain View, California, and incorporated under the laws of Delaware.

## 3.     Jurisdiction and Venue

5.     Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over the claims of Plaintiffs that arise under the Privacy Act.

6.     This Court has personal jurisdiction over Google because Google owns and operates a business that is headquartered in California and conducts substantial business throughout California.

7.     Venue lies in this district pursuant to 28 U.S.C. § 1391(b)(1) because Google is headquartered here.

## 4.     Intradistrict Assignment

8.     Pursuant to Local Rule 3-2(c), assignment to the San Jose Division because Google contracted to provide the services at issue in and from the County of San Clara, and because related litigation is and has been pending before that Division.

## 5. Statement of Facts

9. Google Apps is a suite of integrated Google products that includes Google's web-based email service, Gmail. Google Apps for Education ("GAFE") is a version of Google Apps that Google offers to universities and other educational institutions ("Educational Institutions") for use by their students, faculty, and staff ("Educational Users"). GAFE is free to Educational Users at the point of delivery. Educational Institutions contract with Google for the use of Google Apps for their faculty, staff, and students. Educational Users receive email accounts and addresses with names that reflect the users' Educational Institution, not an association with Google—*e.g.* jane.doe@berkeley.edu.

10. Like other companies that provide otherwise-costly software at a low or zero monetary charge to end users, Google receives substantial economic benefits from providing GAFE to Educational Users and Educational Institutions. For example, Google's brand benefits by increasing its recognition and goodwill among current and future potential customers (the students, staff, and faculty at the school). Google also increases its user base, resulting in significant network effects that drive further adoption of Google's products and broader acceptance of Google's user interface, formats, protocols, and APIs as *de facto* "standards," which creates a feedback loop that further increases the use of Google products.

11. From November 1, 2010 or earlier and until on or about April 30, 2014 (the "Relevant Period"), Google also benefitted from providing GAFE to Educational Users by scanning and processing the content of every email received by or sent from a Google Apps for Education user account to develop sophisticated advertising profiles of the user and for other, still unrevealed, purposes.

12. Plaintiffs used GAFE email accounts provided by their respective Educational Institution(s) (UC Berkeley), during the Relevant Period. They did not receive advertisements while using the GAFE web client (during the Relevant Period, Google was either not advertising to Educational Users through the GAFE web client

**Gallo LLP**
1299 Fourth St., Ste. 505
San Rafael, CA 94901
www.emailprivacylit.com

and/or advertising was turned off in GAFE by their Educational Institution(s)) but the content of Plaintiffs and all Educational Users' emails nevertheless was extracted, analyzed, and used by Google to create user profiles and otherwise to enhance Google's marketing and advertising business interests, including but not limited to serving targeted advertising to Plaintiffs and each of them, either then (through non-GAFE applications, such as Google's search engine) or in the future.

13. Google employed a variety of devices to intercept and acquire the content of all Educational Users' GAFE account emails, including Plaintiffs' emails. These devices included but were not limited to:

a. The Content Onebox process—a distinct piece of Google's infrastructure, the purpose of which is to acquire, read, and interpret the content of in-transit email messages. Through this process, during the relevant time period, Google not only collected the content of Educational Users' email but also created derivative data, including metadata, about and from that content.

b. Changeling—a distinct piece of Google's infrastructure that Google used to acquire, read, and interpret the contents of Educational Users' in-transit email.

14. Google's interception, reading, and interpreting of Educational Users' email for advertising purposes was not a necessary or instrumental component of Google's operation of a functioning email system, nor was it an incidental effect of providing this service. Instead, it was an opportunistic activity conducted to generate profit for Google's advertising business.

15. Each and every individual Plaintiff had a GAFE account and used it to send and receive email during the Relevant Period:

a. Plaintiff Ryan Corley had a GAFE account and used it to send and receive email starting in August of 2012 and continuing through the end of April 2014

Page 4
COMPLAINT

(when Google claims to have stopped intercepting, scanning, and processing GAFE email for advertising purposes) and thereafter:

        b.     Plaintiff William Dormann had a GAFE account and used it to send and receive email starting in April of 2013 and continuing through the end of April 2014 and thereafter;

        c.     Plaintiff Shannon Mehaffey had a GAFE account and used it to send and receive email starting in August of 2013 and continuing through the end of April 2014 and thereafter; and

        d.     Plaintiff Teddey Xiao had a GAFE account and used it to send and receive email starting in August of 2013 and continuing through the end of April 2014 and thereafter.

16.    No Plaintiff authorized Google to acquire, read, and create a user profile on him or her from the contents of his or her Google Apps for Education email for advertising purposes. *To the contrary, until April 30, 2014, Google denied that it was scanning Google Apps for Education users' emails for advertising and misled Educational Institutions into believing their email was private.* Google's lies included (without limitation) the following false statements:

        a.     From at least December 8, 2011 to at least August 21, 2013, Google's Security and Privacy overview webpage for Google Apps stated: "If you are using Google Apps (free edition), email is scanned so we can display contextually relevant advertising in some circumstances. *Note that there is no ad-related scanning or processing in Google Apps for Education or Business with ads disabled*."[1]

        b.     From at least June 18, 2011 to at least September 9, 2012 Google's Security and Privacy overview webpage for Google Apps for Education stated: "We offer

---

[1] *See* http://support.google.com/a/bin/answer.py?hl=en&answer=60762 at web.archive.org. [Emphasis added.]

Page 5

COMPLAINT

Google Apps for Education to schools for free. It's also completely ad-free—which means *your school's content is not processed by Google's advertising systems*."[2]

17. In short, Google lied to GAFE users' affiliated Educational Institutions and made public statements that concealed its true intentions and the programmatic actions of its systems and services. Google thereby misled Educational Institutions (and, at least indirectly, Educational users, including Plaintiffs) into using those services. By these means and devices, and under these false pretenses, Google stole and obtained Plaintiffs' information.

18. Educational Institutions that provided Google Apps for Education services to their affiliated Educational Users agreed, in their contracts with Google, to obtain authorization from end users for Google to provide the services (not for Google to intercept and scan Educational Users' emails for advertising or other commercial purposes). Google did not mandate how these Educational Institutions obtained authorizations. Disclosures and authorizations regarding GAFE therefore varied by school, with some schools directing students to the school's privacy policy, others to Google's general Terms of Service and/or Privacy Policies. Some schools *directly told their users, consistent with public statements by Google, that Google Apps for Education would not scan their emails for advertising purposes*. Plaintiffs' schools were in this final category. Each had disabled ads within its institution's GAFE account and understood its users' email was safe from Google's advertising-related activities.

19. Through the investigation of counsel, Plaintiffs have so far identified 11 schools that expressly assured their Educational Users that Google would respect users' privacy and would not scan users' emails for advertising purposes. (Plaintiffs anticipate that numerous others will be identified in the future.) These statements include the following:

   a. **UC Berkeley's FAQ's at the relevant time said**:

---

[2] *See* http://www.google.com/apps/intl/en/edu/privacy.html at web.archive.org. [Italics added.]

Page 6

COMPLAINT

> **How does privacy protection for bConnected differ from consumer level Google services?**
>
> Berkeley's contract with Google put in place stronger protective measures around data stored and transmitted in the UC Berkeley implementation of the Google Apps core services (see above for which of the core Google services are available in bConnected: "What services are included in bConnected, the UC Berkeley Google Apps for Education suite?").
>
> - Data stored in core services are not scanned for the purpose of displaying ads.
> - Data stored in core services are also not accessible by non-core services.
> - The same access restriction to data in core services applies to third party sites where Google is serving ads.
>
> In consumer-level Google services, data is not protected from being shared between any of the services offered, such as between Google Calendar and Google Search. Using bConnected core services protects data. An example of this protection would be if you log into your bConnected account, then proceed to Google Search to look for something. Ads displaying in Google Search results screen (a non-core service) will not be influenced by data in your bMail or bCal (data in a core service). You can use non-core services from your bConnected account knowing your data is protected.[3]

b. **UC Santa Cruz's "Security Information for Google Apps" said**:

> **Google Privacy Policy and Terms of Service**
>
> The University of California has a contract with Google that provides assurances regarding the security and privacy of customer information stored on Google's systems. UC's contract with Google takes precedence if there is a conflict with Google's posted terms or policies.
>
> […]
>
> MYTH: Google accesses people's email for marketing purposes.

---

[3] *See* http://bconnected.berkeley.edu/faq-page#t30n332 at web.archive.org. [Emphasis in original.]

**Gallo LLP**
1299 Fourth St., Ste. 505
San Rafael, CA 94901
www.emailprivacylit.com

FACT: Google Apps for Education is ad-free for students, faculty, and staff. This means that your email is not processed by Google's advertising systems."[4]

c. **San Diego State University's "Frequently Asked Questions" said**:

**Q. Will SDSU still "own" and control the email and calendar data when we move to Google?**

**A.** Yes. Under our agreement, SDSU will continue to control the email data stored at Google. Enterprise Technology Services (ETS) will create and manage the email accounts, including password resets. In addition, Google will not scan the email or calendar data for advertising purposes.[5]

d. **Harvard University's "FAQs" said**:

Google Apps for Harvard has the following benefits:

- Data stored within Google Apps for Harvard will be protected under the Harvard-Google contract, meaning that Google will adhere to Harvard's compliance practices with FERPA and DMCA laws, will not advertise to users, and will not use user data for purposes other than maintaining the Google Apps for Harvard service.
- You will easily be able to look up other Google Apps for Harvard users within the Google Apps directory.
- You can receive IT support and advice from HUIT.[6]

e. **Yale University's "Data Security & Privacy" page said:**

Will Google safeguard individual privacy of our email and data?

Yes, Google will safeguard individual privacy of our email and data. In addition to the standard privacy practices that Google offers to all its users, Yale also has a signed contract with Google that guarantees privacy and confidentiality in ways that are analogous to the way Yale currently provides email services.

What does Google intend to do with the data, in addition to providing the contracted services?

---

[4] *See* http://its.ucsc.edu/google/security.html at web.archive.org.
[5] *See* http://ets.sdsu.edu/helpdesk/faqs.htm#gen4 at web.archive.org.
[6] *See* http://g.harvard.edu/faqs at web.archive.org.

**Gallo LLP**
1299 Fourth St., Ste. 505
San Rafael, CA 94901
www.emailprivacylit.com

**Gallo LLP**
1299 Fourth St., Ste. 505
San Rafael, CA 94901
www.emailprivacylit.com

Google asserts that Yale will retain possession of EliApps data. "Data mining" and vending ads are NOT part of the service package for EliApps accounts.[7]

    f. **The University of Arizona's "Student Email" page said**:

Student email provided by Google offers numerous benefits:

- over 7 GB of storage space
- access via web, preferred POP or IMAP email client, or mobile device
- email organized with Google's outstanding search tools
- Google's excellent security and uptime record
- educational contract, which means no ads and full privacy protection for your content[8]

    g. **The University of Maine's "Google Apps Frequently Asked Questions" page said**:

Will Google search our email for marketing purposes? No. The educational agreement prohibits that activity.[9]

    h. **Bates College's "Will Google use my data for nefarious purposes?" page said**:

Will Google use my data for nefarious purposes?

It's commonly understood that Google "mines" user data for aggregate analysis that it then sells to other companies as a source of revenue. Because Google Apps for Education is ad-free for students, faculty, and staff, no email or other data is processed by Google's advertising systems, which is the source of their data analysis operation.[10]

    i. **The State University of New York at Stony Brook's "Making the move to Google Apps for Education" presentation said**:

**Privacy Concerns**

---

[7] *See* http://its.yale.edu/services/email-and-calendars/eliapps-google-apps-education/eliapps-faq at web.archive.org.
[8] *See* http://uits.arizona.edu/services/catmail? at web.archive.org.
[9] *See* http://mail.maine.edu/google/faq.html#a6 at web.archive.org.
[10] *See* http://www.bates.edu/campusconnect/2012/05/will-google-use-my-data-for-nefarious-purposes/ at web.archive.org.

- Google Apps is governed by a detailed Privacy Policy, (SUNY-wide contract) which ensures Google **will not** share or use personal information placed in its systems

- Google Apps Terms of Service contractually ensures that Stony Brook is the sole owner of its data

- There are no advertisements in Google Apps for Education

- Google is contractually forbidden from scanning content
Data is scanned for spam, virus protection, malware detection and to enable powerful search capability.[11]

j. **The University of Washington's "UW Google Apps FAQs" page said**:

"UW Google Apps accounts do not contain targeted advertising and are not scanned for advertising purposes.[12]"

k. **Pacific Lutheran University's "Frequently Asked Questions About Google Apps for EDU@PLU" page said**:

**What about privacy? I've heard that Google tracks your emails. Do you have any concerns about this?**

Initially, Google was not the lead option because of our privacy concerns. However, we discovered that we can turn off advertisements and have assurances in our contract that say "each party is going to protect confidential information as if it were its own." The only reason for searching our email would be a legal requirement to do so. That would involve a subpoena and Google would contact PLU prior to any action on their part. We are confident that our privacy concerns have been adequately addressed.

**I understand Google has a lot of advertising. Won't that be a problem?**

We have an option to turn that off, which we will exercise. Alumni accounts, if we implement those, would have advertising—but that's not part of this proposal. Google will not take our information, scan, it and use it for their marketing. This stipulation is spelled out in the contract with Google.

**If there is no advertising, how does Google provide this service at no cost?**

---

[11] *See* http://it.cc.stonybrook.edu/site_documents/google/Town_Hall_presentation.pdf at web.archive.org.

[12] *See* http://www.washington.edu/itconnect/connect/email/google-apps/uw-google-apps-faqs#ga_data at web.archive.org.

> Because they're advertising to everyone else. Google began as a project from another university and this is their way of giving back. This contract is for four years and a lot could change, but it's a much better deal for us even during the four years. We must move away from our current aging system because it is not sustainable.[13]

20. Based on the foregoing, Plaintiffs are informed and believe that, in addition to assuring Educational Institutions that Google would not scan emails for advertising purposes, Google specifically and contractually promised that it would not do so *in response to Educational Institutions' express efforts to safeguard their respective Educational Users' privacy and for those users' express and intended benefit*. Google's scanning therefore defrauded Educational Institutions, breached its express written agreements with these Educational Institutions and, at least indirectly deceived Educational Users, causing the unconsented and unknowing loss of privacy and damage of these users.

21. On March 18, 2014, in *In re Google Inc. Gmail Litigation*, No. 13-MD-2430-LHK, 2014 WL 1102660, at *15 (N.D. Cal. Mar. 18, 2014) ("*Gmail*"), U.S. District Court Judge Lucy Koh declined to certify a proposed class of virtually all Google Apps for Education email users[14] asserting a Privacy Act claim because "the diversity of disclosures made by educational institutions, ranging from specific disclosures about the method and reasons for interceptions to the incorporation of vague disclosures, may well lead a fact-finder to conclude that end users at some universities consented, while end users at other universities did not."

22. The universal class of Google Apps for Education users in the *Gmail* matter originated with *Robert Fread and Rafael Carillo v. Google Inc.*, No. CV-13-01961-HRL, filed in the Northern District of California, San Jose Division on April 29, 2013. The class was defined in that complaint as "All Google Apps for Education users

---

[13] *See* http://www.plu.edu/google-apps/faq/home.php at web.archive.org.

[14] That proposed class was defined as "All Google Apps for Education Users who have, through their Google Apps for Education email accounts, sent an email message to a Gmail account user with a "@gmail.com" address or have received an email. *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *10.

**Gallo LLP**
1299 Fourth St., Ste. 505
San Rafael, CA 94901
www.emailprivacylit.com

who, through their Google Apps for Education email account, have Sent or Received email messages up through and including the date of class certification."[15] A slightly narrower class definition was included in the Plaintiffs' Consolidated Individual and Class Action Complaint, filed in the *Gmail* multi-district litigation on May 23, 2013.[16]

23. Plaintiffs here, and each of them, fall within the group of Educational Users who did not consent. Each had, within the relevant time frame, a Google Apps for Education account from an Educational Institution that told end users that their school-provided GAFE account emails would not be scanned for commercial purposes. Consistent with Google's public pronouncements (quoted above), these schools and Plaintiffs reasonably did not know, understand, or suspect that Google was secretly reading their emails for commercial purposes.

24. Further, for years, neither Google nor the press disclosed that Google was scanning Plaintiffs' emails for advertising purposes. The earliest disclosures were not widely observed. End users, including Plaintiffs, therefore reasonably first learned of Google's Privacy Act violations only recently, well within the applicable statutory limitations period.

25. In March of 2014, some Educational Institutions first learned that Google was scanning Educational Users' emails for advertising and other commercial purposes, despite representations and covenants to the contrary. These institutions pressured Google to stop. In response, on April 30, 2014, Google posted an announcement on its Google for Work blog—which users generally do not read.

26. That carefully-crafted post, entitled "Protecting Students with Google Apps for Education," was incomprehensible, at least on the relevant points. It touted

---

[15] Complaint available online at http://digitalcommons.law.scu.edu/cgi/viewcontent.cgi?article=1366&context=historical.

[16] That complaint defined the class as: "All Google Apps for Education Users who have, through their Google Apps for Education email accounts, (1) sent an email message to a Gmail account user with an @gmail.com address and received a reply, or (2) received an email message, within two years before the filing of this action up through and including the date of class certification." *Gmail* complaint at ¶ 387.

Page 12

COMPLAINT

**Gallo LLP**
1299 Fourth St., Ste. 505
San Rafael, CA 94901
www.emailprivacylit.com

Google's dedication to the privacy and security of GAFE end users. Buried in the middle, Google claimed it was "taking additional steps" to "enhance the educational experience" of GAFE end users by having now "permanently removed all ads scanning in Gmail for Apps for Education, which means Google cannot collect or use student data in Apps for Education services for advertising purposes."

27. Google's vague, flowery, and self-serving language was intended to ensure and ensured that concerned Educational institutions would be reassured while GAFE users who read the announcement still would not understand or suspect that Google had been scanning their email content for advertising purposes.

28. Google has refused to release additional details that would confirm its indirect admission that it has stopped collecting or using student data (or information derived from analysis of student data) for advertising purposes; furthermore, Google has refused to delete previously-collected data and has refused to promise not to use previously-collected data for advertising purposes.

29. Plaintiffs are informed and believe that Google has retained and uses or intends to use all data created or otherwise obtained from its interception of emails sent or received by Plaintiffs.

## 6. Claims

### COUNT ONE

### (Violations of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 et seq.)

30. Plaintiffs incorporate the preceding paragraphs of this complaint, and each of them, as if repeated here.

31. Google's acts, as alleged here, have at all times affected interstate commerce. Google has more than 425 million users worldwide, including numerous users in all 50 states. It has more than 30 million GAFE end users, including numerous

users in most or all of the United States. Its services are provided over the internet using servers located in many states.

32. Google, as a corporation, is a "person" within the meaning of 18 U.S.C. § 2510(6).

33. The email communications transmitted by Plaintiffs and each of them were and at all relevant times have been "electronic communications" within the meaning of 18 U.S.C. § 2510(11).

34. Google did as complained of here without the consent of Plaintiffs, or any of them.

35. Google's actions at all relevant times were intentional as evidenced by, among other things, the design of its data flow processes, its utilization of message-scanning devices, its utilization of devices to divine the meaning of the content of private messages and to discern the communicants' likely thoughts before writing them, and Google's use of that information for, among other things, data profiling and ad targeting.

36. Google used one or more "devices," within the meaning of 18 U.S.C. § 2510(5), to intercept the electronic communications transmitted to or by Plaintiffs, and each of them. These devices include, but are not limited to, the distinct pieces of Google infrastructure comprising the Content One Box process and Changeling.

37. These devices were not used by Google, operating as an electronic communication service, in the ordinary course of providing electronic communication services. Google's interception of electronic communications sent by and to Plaintiffs, and each of them was, among other things: (a) for undisclosed purposes; (b) for purposes of acquiring, cataloging and retaining user data; (c) for purposes beyond facilitating the transmission of emails sent or received by Plaintiffs; (d) contrary to Google's public statements; (e) in violation of federal law; and (f) in violation of the property, contractual, and other rights of Plaintiffs in their private information.

38. These activities are not within the ordinary course of business of a provider of an electronic communication service—particularly one with the motto "don't be evil"—and are not technologically relevant to providing electronic communications to users. Instead, these actions involved obtaining and creating detailed information about the lives of users for unrelated commercial purposes, namely, Google's primary revenue-generating activity of selling highly-targeted advertising to businesses. In the words of Eric Schmidt, Google's former CEO: "I think of Google as an advertising company, who serves the advertising industry."[17]

39. Dr. Schmidt describes Google's goal: "We can suggest what you should do next, what you care about. Imagine: we know where you are, we know what you like."[18] This knowledge gives Google "[t]he power of individual targeting—the technology will be so good that it will be very hard for people to watch or consume something that has not in some sense been tailored for them."[19] "If we show fewer ads that are more targeted, those ads are worth more. So we're in this strange situation where we show a smaller number of ads and we make more money because we show better ads. And that's the secret of Google."[20]

40. Plaintiffs are informed and believe that the conduct alleged herein did not occur after the electronic communications had finished being transmitted to the end user or were in end-user-accessible storage. Instead, Google chose to intercept, transfer, transmit, or route each communication so as to acquire and learn private information

---

[17] Michael Arrington. "Google CEO Eric Schmidt Interview: His Thoughts on Search, Books, News, Mobile, Competition and More." Tech Crunch (Aug. 31, 2009) (available at: http://techcrunch.com/2009/08/31/google-ceo-eric-schmidt-interview-his-thoughts-on-search-books-news-mobile-competition-and-more/)

[18] Alexia Tsotis. "Eric Schmidt: We know where you are, we know what you like." Tech Crunch (Sep. 7, 2010) (available at http://techcrunch.com/2010/09/07/eric-schmidt-ifa/).

[19] Jenkins, Holman W. "Google and the Search for the Future." The Wall Street Journal (Aug. 14, 2010) (available at http://www.wsj.com/articles/SB10001424052748704901104575423294099527212)

[20] Jennifer Dauble. "CNBC Exclusive: CNBC's Maria Bartiromo Interviews Google CEO Eric Scmidt." CNBC (Apr. 30, 2008) (available at http://www.cnbc.com/id/24386465).

about Plaintiffs from their emails while those emails were still in transit to the end-user—*i.e.*, even before the addressee of the email received it.

41.  Google's conduct complained of herein violated 18 U.S.C. § 2511(1)(a), which prohibits the interception or attempted interception of "any wire, oral, or electronic communication."

42.  Google's conduct complained of herein violated 18 U.S.C. § 2511(1)(d), which prohibits the intentional use or attempted use of "contents of any wire, oral, or electronic communication," when such contents were acquired in violation of 18 U.S.C. § 2511(1)(a).

43.  As a result of Google's violations of § 2511, and pursuant to § 2520, each Plaintiff seeks the following relief:

    a.  Statutory damages of the greater of $10,000 or $100 for each day on which any violation occurred as to that Plaintiff;

    b.  a declaration that Google's conduct before November 22, 2013 violated the Privacy Act;

    c.  injunctive relief in the form of, *inter alia*, an order requiring Google to purge all information gathered from the interception of the content of Plaintiffs' messages in violation of the Privacy Act, and all information derived from it;

    d.  attorney's fees and costs of litigation pursuant to the ECPA, the common law private attorney general doctrine, Civil Code Section 1021.5, and each and all other applicable laws; and

    e.  such other and further relief as the Court deems just and proper.

## II.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray as follows:

A.  For judgment against Google for Plaintiffs, and each of them;

B.  For a declaration that Google's conduct violated the Privacy Act;

C. For injunctive relief in the form of, *inter alia*, an order requiring Google to purge all information gathered from the interception of the content of Plaintiffs' messages in violation of the Privacy Act;

D. For an award of statutory damages to Plaintiffs pursuant to 18 U.S.C. § 2520;

E. For attorney's fees pursuant to the common law private attorney general doctrine, California Civil Code section 1021.1, and 18 U.S.C. § 2520(b)(3);

F. For costs of suit; and

G. For all such other and further relief as the Court deems appropriate.

Dated: January 27, 2016          Respectfully submitted,

**Gallo LLP**

By:     /s/ Ray E. Gallo
             Ray E. Gallo
        *Attorneys for Plaintiffs*

**Gallo LLP**
1299 Fourth St., Ste. 505
San Rafael, CA 94901
www.emailprivacylit.com

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated: January 27, 2016

Respectfully submitted,

**Gallo LLP**

By:     /s/ Ray E. Gallo
           Ray E. Gallo
           *Attorneys for Plaintiffs*